**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

LISA ESSLINGER,

    Plaintiff,

v.

PERSHING ADVISOR SOLUTIONS LLC, a Delaware limited liability company,

    Defendant.

_____

**COMPLAINT AND JURY DEMAND**
_____

    Plaintiff Lisa Esslinger for her Complaint states:

## **INTRODUCTION**

    1.    This is a sex-based wage discrimination suit brought by a former Business Development Officer of Pershing Advisor Solutions LLC who was subjected to unequal pay and retaliation after complaining about this illegal treatment in violation of the Equal Pay Act of 1963, as amended, 29 U.S.C. §§ 206(d), 215(a)(3) ("EPA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). She also brings claims of breach of contract, promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation based on Pershing's repeated and unfulfilled promises to increase her pay level to similarly situated males who Plaintiff consistently outperformed.

## PARTIES

2. Plaintiff Lisa Esslinger is a resident of the State of Colorado.

3. Defendant Pershing Advisor Solutions LLC ("Pershing") is a Delaware limited liability company that is authorized to do business in Colorado.

4. Pershing's principal office is located in Jersey City, New Jersey.

5. Pershing maintains a registered agent in Denver, Colorado.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, and specifically under the EPA, 29 U.S.C. §§ 206(d), 215(a)(3), and Title VII, 42 U.S.C. § 2000e *et seq.* The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

8. At all relevant times, Defendant Pershing was covered by the definitions of "employer" set forth in 29 U.S.C. § 203(d) of the Fair Labor Standards Act, of which the EPA is a part, and 42 U.S.C. § 2000e(b) of Title VII.

9. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and requested a Notice of Right to Sue letter on August 14, 2017.

## SPECIFIC ALLEGATIONS

10. Pershing provides wealth management services to individuals and businesses.

11. Pershing's Business Development Officers ("BDOs") sell the company's services and expertise to Registered Investment Advisors.

12. In September 2012, Pershing hired Plaintiff as a "core level K" BDO.

13. Throughout Plaintiff's employment with Pershing, she was an outstanding performer who consistently and often far exceeded her annual asset goal as a core level K BDO of $450 million.

14. At the time that Plaintiff was hired, she was not aware that Pershing had two BDO levels: core level K and senior level L.

15. Levels K and L share the same duties and differ only in their asset goals, which are $450 million and $650 million, respectively.

16. Taking into account base salary, commissions, and year-end bonuses, senior level L BDOs earn substantially more anually than core level K BDOs.

17. Given Plaintiff's previous relevant experience and the quality of her performance, she was surprised to discover in the first quarter of 2013, that she had been hired on as a core level K BDO while a number of the company's male BDOs, who brought in fewer assets and less revenue annually than Plaintiff, were classified at the higher senior level L.

18. In the fourth quarter of 2013, Plaintiff spoke with her manager at the time, Ben Harrison, about her interest in being promoted to a senior level L BDO.

19. Mr. Harrison took no action in response to Plaintiff's inquiry and he was then promoted to National Sales Director.

20. In December 2014, Plaintiff brought up the same issue with her new manager, Pablo Bizjack. Mr. Bizjack responded that he would discuss it with Mr. Harrison.

21. After speaking with Mr. Harrison, Mr. Bizjack told Plaintiff that the company would promote her to senior level L the next year if she "put up the numbers and earned it."

22. Around January 2015, Plaintiff learned that Pershing had hired a male, Greg Cheng, to serve as a senior level L BDO.

23. When Plaintiff asked Mr. Bizjack why Mr. Cheng had been brought in as a level L, Mr. Bizjack said that it was because Mr. Cheng had more experience.

24. Plaintiff later learned that this was not the case; Mr. Cheng had only half of Plaintiff's relevant experience.

25. In March 2015, when Plaintiff told Mr. Bizjack that she had more experience than Mr. Cheng, Mr. Bizjack responded that Plaintiff "needed to perform" in order to receive the promotion and that he was hesitant to assign her the $650 million goal of a senior level L BDO.

26. Mr. Bizjack had no justification for this concern, as Plaintiff had been outperforming each of Pershing's west coast senior level L BDOs for years.

27. At that time, Plaintiff told Mr. Bizjack that she was concerned that, as the only woman on the team, she was not being treated equally.

28. Mr. Bizjack never followed up on Plaintiff's concerns.

29. Regardless, Plaintiff applied her best efforts to her position and, in 2015, ultimately brought in over $3 billion in total assets.

30. In comparison, neither of Plaintiff's male peers in the western region, both of whom are senior level L BDOs, reached even 60% of their annual goals of $650 million.

31. On or around November 11, 2015, Plaintiff spoke with Mr. Bizjack and asked that she be promoted to a senior level L as they had discussed.

32. Mr. Bizjack responded that the company could not do that now and he would need to speak with Mr. Harrison.

33. On or around December 14, 2015, Mr. Harrison refused to promote Plaintiff to a senior level L BDO allegedly because the company had not provided any promotions with accompanying raises to employees in 2015.

34. This was not the case, however, as just a few months before, Pershing had promoted and given raises to two male employees, Evan LaHuta and Jimmy Lafaman.

35. Mr. Harrison had also been promoted and given a raise earlier in the year.

36. When Plaintiff brought up the subject of being promoted to a senior level L BDO again on January 12, 2016 to Mr. Bizjack and Mr. Harrison, they told her that she would "need to earn it."

37. When Plaintiff responded by pointing out that she had been outperforming the senior level L BDOs in her region for year and had recently been rated Pershing's top producing BDO in the country across all regions, Mr. Bizjack and Mr. Harrison responded that Plaintiff was an "individual contributor" but needed to be a "team player."

38. Mr. Bizjack and Mr. Harrison then alleged that it had recently come to their attention that Plaintiff was creating a "negative culture" in the Denver office and that this was preventing Plaintiff from being promoted.

39. They also told Plaintiff that she needed to be part of more "internal committees."

40. This was the first time that Plaintiff had ever received any such feedback or had these purported issues brought to her attention.

41. After her meeting with Mr. Bizjack and Mr. Harrison, Plaintiff spoke with a few of her co-workers in the Denver office and they all disagreed that she had been creating a supposedly "negative culture."

42. The directive that Plaintiff be a part of more committees lacked a basis given that she had already been a part of several different committees during her employment, including the ACAT Task Force Committee and Awards and Recognition Committee.

43. Regardless, to Plaintiff's knowledge, male senior level L BDO's were not similarly required to join internal committees.

44. In February 2016, the Chief Operating Officer, Karen Novak, said that Mr. Harrison and Mr. Bizjack had spoken to her and that she wanted to make sure that Plaintiff was where she "should be" in regard to pay.

45. Shortly thereafter, on February 23, an employee relations representative from BNY Mellon contacted Plaintiff and said that she was going to look into the situation and "work on a plan."

46. When Plaintiff heard back about the company's supposed investigation several months later, her concerns were entirely discounted.

47. Although Plaintiff was assured that a meeting would be forthcoming to discuss her future with Pershing and to define what "leadership" components she needed to develop in order to be promoted, no one met with her about any such matters.

48. On April 20, 2016, through counsel, Plaintiff sent a letter to Pershing in which she complained that she was being paid less than males in comparable positions in violation of the EPA and Title VII.

49. The company refused to take any action to mitigate the situation in response to Plaintiff's April 20, 2016 complaint.

50. In early May 2016, Plaintiff attended a symposium with the executive leadership at which the senior leadership largely ignored her.

51. On May 24, 2016, Plaintiff submitted her notice of resignation from Pershing due to the unfair and intolerable working conditions that she had endured over the last two years and the fact that the company refused to treat her the same as her male counterparts.

52. Plaintiff was constructively discharged on June 3, 2016.

53. At the time of her constructive discharge, Plaintiff had already exceeded her level K asset goal for 2016.

54. Plaintiff filed a charge of discrimination with the EEOC on June 27, 2016.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Sex-Based Wage Discrimination in violation of the Equal Pay Act of 1963, as amended)

55. The foregoing allegations are realleged and incorporated herein by reference.

56. During her employment with Pershing, Plaintiff was performing work that was substantially equal to one or more male employees considering the skills, duties, supervision, effort, and responsibilities of the BDO position.

57. The conditions where the work was performed by Plaintiff and one or more male BDOs was basically the same.

58. One or more male BDOs were paid more than Plaintiff under such circumstances.

59. Pershing either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

60. As a direct and proximate result of Pershing's actions, Plaintiff has suffered damages, including lost wages and benefits.

## SECOND CLAIM FOR RELIEF
(Sex Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended)

61. The foregoing allegations are realleged and incorporated herein by reference.

62. Pershing subjected Plaintiff to different terms and conditions of her employment based on sex by paying her less than one or more males who occupied a similar job and refusing to promote her.

63. Pershing's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

64. Pershing's conduct discriminated against Plaintiff on the basis of her sex in violation of Title VII.

65. As a direct and proximate result of Pershing's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## THIRD CLAIM FOR RELIEF
(Retaliation in violation of the Equal Pay Act of 1963, as amended)

66. The foregoing allegations are realleged and incorporated herein by reference.

67. Plaintiff complained about a violation of the EPA.

68. As a result of Plaintiff's protected opposition to a violation of the EPA, Pershing retaliated against her by subjecting her to the different terms and conditions of employment as described in this Complaint, including failing to address her complaints, failing to promote her to a senior level L BDO, continuing to pay her less than one or more males performing substantially similar work despite her superior performance, accusing her of unfounded performance issues like creating a "negative culture," and ultimately making the environment intolerable so as to constructively discharge her.

69. Pershing's conduct violated 29 U.S.C. § 215(a)(3).

70. Pershing either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

71. As a direct and proximate result of Pershing's actions, Plaintiff has suffered damages, including lost wages and benefits.

### FOURTH CLAIM FOR RELIEF
(Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended)

72. The foregoing allegations are realleged and incorporated herein by reference.

73. Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under Title VII, including discrimination in pay based on sex.

74. As a result of Plaintiff's protected opposition to discrimination, Pershing retaliated against her by subjecting her to the different terms and conditions of employment as described in this Complaint, including failing to address her complaints, failing to promote her to a senior level L BDO, continuing to pay her less than one or more males performing substantially similar work despite her superior performance, accusing her of unfounded

performance issues like creating a "negative culture," and ultimately making the environment intolerable so as to constructively discharge her.

75. Pershing's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

76. Pershing's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

77. As a direct and proximate result of Pershing's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## FIFTH CLAIM FOR RELIEF
(Breach of Contract)

78. The foregoing allegations are realleged and incorporated herein by reference.

79. Pershing offered to promote Plaintiff to a senior level L BDO within a year if she "put up the numbers and earned it."

80. Pershing's promise constituted a contract between Plaintiff and Pershing.

81. Plaintiff accepted this contract by continuing to work for the company and performing at an outstanding level.

82. Plaintiff substantially performed by meeting, and then exceeding, the annual goal for a senior L BDO by more than 450%.

83. Pershing breached the contract by failing to promote Plaintiff and, furthermore, by constructively discharging her.

84. As a direct and proximate result of Pershing's actions, Plaintiff has suffered economic loss, including lost wages and benefits, and diminished reputation and other pecuniary losses.

### SIXTH CLAIM FOR RELIEF
(Negligent Misrepresentation)

85. The foregoing allegations are realleged and incorporated herein by reference.

86. In the course of its business, Defendant gave false information to Plaintiff concerning the terms and conditions of her employment, namely that it planned to promote her to a level L senior BDO if she "put up the numbers and earned it."

87. Defendant gave this information to Plaintiff her her use and guidance in determining whether she should continue working for the company.

88. Defendant was negligent in obtaining or communicating this information to Plaintiff.

89. Defendant gave the information with the intent or knowing that Plaintiff would act in reliance on the information.

90. To her detriment, Plaintiff justifiably relied on the information supplied by Defendant by, among other things, continuing to work for Defendant and producing outstanding financial results for the company.

91. As a proximate result of Defendant's actions, Plaintiff suffered and continues to suffer a loss of wages and benefits, a loss of job, loss of career opportunities, and interruption of career path, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, and other consequential damages.

## SEVENTH CLAIM FOR RELIEF
(Fraudulent Misrepresentation)

92. The foregoing allegations are realleged and incorporated herein by reference.

93. Defendant knowingly made a false representation of a material fact to Plaintiff, namely that it planned to promote her to a level L senior BDO if she "put up the numbers and earned it."

94. At the time that Defendant made this representation, it either knew that the representation was false or was aware that it did not know whether it was true or false.

95. Defendant intended for Plaintiff to act upon this representation.

96. To her detriment, Plaintiff justifiably relied upon the information that Defendant provided to her by, among other things, continuing to work for Defendant and producing outstanding financial results for the company.

97. Pershing's actions were done knowingly and intentionally or with reckless disregard of Plaintiff's rights.

98. As a proximate result of Defendant's actions, Plaintiff suffered and continues to suffer a loss of wages and benefits, a loss of job, loss of career opportunities, and interruption of career path, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, and other consequential damages.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff Lisa Esslinger respectfully requests that this Court enter judgment in her favor and against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B. Back pay and benefits;

C. Injunctive and/or declaratory relief;

E. Liquidated damages;

F. Punitive damages;

G. Attorney fees and costs of the action, including expert witness fees, as appropriate;

H. Pre-judgment and post-judgment interest at the highest lawful rate; and

I. Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted November 10, 2017.

By:   SWEENEY & BECHTOLD, LLC

s/Charlotte Sweeney
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

s/Ariel B. DeFazio
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: abdefazio@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
1958 Five Iron Drive
Castle Rock, CO 80104

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

By:   SWEENEY & BECHTOLD, LLC

s/Charlotte Sweeney
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

s/Ariel B. DeFazio
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: abdefazio@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF